AMERICAN SAMOA GOVERNMENT

v.

SALE UO

High Court of American Samoa
Trial Division

CR No. 62-86

February 19, 1987

Before REES, Chief Justice, and OLO, Associate
Judge.

Counsel: For Government, William Wallace
For Defendant, Charles Ala'ilima

The defendant was convicted of homicide by
vehicle and now moves for a reconsideration of the
judgment.

The statute defining the crime of homicide by
vehicle, A.S.C.A. § 22.0706, prescribes three
elements. It must be proved that the defendant
violated a traffic law, that someone died, and that
the violation of law was the "proximate cause" of

14

the   ~~h~~.   In this case the two judges found that the ~~ac~~ ~~ndant~~ was exceeding the posted speed limit, that her vehicle struck and killed Aitofi Tusani, and that the defendant's excessive speed was the proximate cause of the death.

The defendant contends that none of the three elements was proved beyond a reasonable doubt at trial. Instead, defendant argues, the court made three inferences not supported by the evidence.

First, the defendant contends that the court was bound to find from the evidence that the speed limit was thirty miles an hour rather than twenty miles an hour, and therefore that the defendant was not speeding. This contention is based on defense counsel's cross-examination of the police officer who investigated the accident. The officer had testified that the posted speed limit where the accident occurred is twenty miles per hour. Defense counsel asked the officer if that was because this stretch of road is near the Community College, and the officer answered affirmatively. Defense counsel then asked the officer whether school was in session at the time of the accident. The officer said it was not. Since A.S.C.A. § 22.0323 establishes a thirty mile per hour limit except where otherwise posted, defense counsel urged the court to regard the speed limit as thirty miles per hour at the time of the accident. The court, however, concluded that the posted limit of twenty miles per hour was in effect at all times, and observed that in any event judicial notice could be taken of the fact that classes at the Community College are not confined to the hours kept by elementary and secondary schools.[1]

_____

[1]. The court further concluded, in accordance with the testimony of all witnesses including the defendant herself, that the defendant had been traveling between twenty-five and forty-five miles per hour at the time of the accident. If the court had accepted the defendant's view that the speed limit was thirty miles per hour except when classes at the Community College were in session, it would have been necessary to make a more precise finding with regard to the speed of the vehicle. The defendant herself testified that she was proceeding at twenty-seven miles per hour just before she struck the victim. The somewhat complicated testimony of the other witness offered by the defense suggests

15

Whether the speed limit was twenty or thirty miles per hour is a question of law. The only relevant fact in evidence was that a sign near the scene of the accident announced a twenty mile per hour limit. If the prosecution had objected to the introduction of the police officer's opinion of why the Commissioner of Public Safety had posted the sign, the objection might well have been sustained. When the opinion of a person who has not been qualified as an expert is introduced without objection, the court is not bound to accept the opinion as fact but must give it the weight to which the court believes it is entitled. Moreover, even if the court were to agree with the officer's opinion of the Commissioner's motives in causing the sign to be posted, the legal effect of such posting was to estabish a twenty mile per hour limit at all times. See A.S.C.A. 8 22.0323(b). Thus the observation from the bench to which the defendant now particularly objects, to the effect that a court on a small island can take judicial notice of the business hours of an important governmental institution on the same island, was not necessary to the holding that the speed limit was twenty miles per hour.

The defendant also urges reconsideration of the finding that excessive speed was the proximate cause of the victim's death. Defense counsel correctly characterizes as "speculation" the court's statement from the bench that the accident could have been avoided if the defendant had been observing the twenty mile per hour speed limit.

---

a speed of about thirty-five miles per hour. The circumstantial evidence and the testimony of the two prosecution witnesses suggest a somewhat higher rate of speed. Since the court found a traffic violation that proximately caused the victim's death even on the defendant's own relatively low estimate of her speed, a more precise finding was unnecessary.
The principal factual dispute between the prosecution and the defense was not about speed but about whether the defendant was attempting illegally to pass one or more cars that had stopped to let the victim and her sister cross the road. The court found that this had not been proved beyond a reasonable doubt.

Defense counsel further asserts that "the speed of the vehicle would be immaterial if, as the evidence suggests, the injury was caused by the act of braking the vehicle and the deceased falling off the braking vehicle and striking her head." Defendant's memorandum at 4.

The concept of "proximate cause" is not an easy one to describe or to apply. Some traditional formulations suggest that the determination is a metaphysical one, amounting to the selection from among the many factors that led up to an event the one that "really" or "actively" caused it. Later formulations have tended to characterize the determination as a value judgment, selecting from among many factual causes the most culpable or socially undesirable. Indeed, the term has long fallen into disfavor with legal scholars on the ground, among others, that it tends to confuse values with facts and thereby to allow judges to make determinations that should have been made by juries and vice versa. See generally W. Prosser & P. Keeton, The Law of Torts 272-80 (5th ed. 1984). Since the term is explicitly contained in A.S.C.A. § 22.0706, however, we must do the best we can with it. In this case the problem is perhaps simplified by the absence of a jury, leaving the judges to make both the factual and the legal conclusions comprehended within the concept of proximate cause; but it is also complicated somewhat by the criminal nature of the proceeding, which dictates that the facts must be proved beyond a reasonable doubt.

There is no way to know for sure what would have happened if the defendant had been observing the speed limit. A trier of fact, however, must not insist on proof to a scientific certainty of any element in a case, least of all an element that necessarily rests on what counsel for the defense calls "speculation." If triers of fact charged with deciding what "proximately caused" an event were absolutely forbidden to draw inferences from the record evidence, based partly on their own experience of human nature and of the physical laws of the universe, then no one would ever be convicted under the homicide by vehicle statute or any similar law.[2] But this is not the test.

_____

2. Ironically, the defendant's proposed substitute for the drawing of such inferences by the court is that the court should accept similar inferences drawn by the defendant's witnesses as though they were uncontroverted

17

Rather, we hold that the element of proximate causation comprehends two inquiries: the court must be satisfied as a matter of law that the traffic regulation which the defendant violated was intended to prevent the sort of harm that actually occurred; and the trier of fact must be satisfied beyond a reasonable doubt that the violation was a substantial factor in bringing about the accident.

The focus in each of these inquiries is not on what might have happened if things had been different, but on the relationship between the violation and the event that actually did happen. If, for instance, the defendant's violation of the law had consisted solely in not having brake lights or in having left her driver's license at home, then the violation would not have been a substantial contributing factor in the death. Speeding, on the other hand, is forbidden precisely because speeding cars tend to kill people in just the way Aitofi Tusani was killed. The law designates an authority to establish for each part of the highway a speed beyond which the likelihood of accidents is deemed unacceptably high. In this case defendant was exceeding this limit by a factor of somewhere between 25 and 125 per cent. Two girls were walking across the road to catch a bus that had stopped for them. The defendant's car hit one of the girls, who was then carried on the hood for some distance before falling to the pavement. She died a few days later, never having regained consciousness. In our capacity as judges of the law, we would regard it as a usurpation to deny the trier of fact the right to conclude from such evidence that the speeding proximately caused the victim's death. And in our capacity as triers of fact, we are morally certain that it did.

Defendant maintains that the girl entered the roadway with insufficient attention to traffic conditions and that this rendered the accident inevitable regardless of defendant's speed. If the evidence suggested that the girl had suddenly darted into the road, most formulations of the proximate cause standard would treat the victim's

facts. See Defendant's Memorandum at 3 ("The court is engaging in speculation and its conclusion is not supported by the evidence presented. Defendant and her witness John Kane both testified that the accident would have occurred had the car been going twenty miles an hour.").

act as a "supervening cause" that would prevent the defendant's violation of law from having been the proximate cause of the injury.[3] On the basis of the evidence, however, we are convinced beyond a reasonable doubt that Aitofi was walking rather than running and was well into the roadway by the time she was hit. Indeed, between the time Aitofi had entered the roadway and the time of the accident a second girl who was walking a few feet behind her had also entered the roadway. Any minimally competent driver who was observing the twenty mile speed limit and whose eyes were on the road would have been able to stop in time to avoid the accident. Since there is no evidence that the defendant was not keeping her eyes on the road,[4] we conclude that speed was the proximate cause of the accident.

---

[3]. Defense counsel seems to argue not just that defendant's speeding was not the proximate cause of the victim's death, but that it was not a cause of the death at all. This, however, is almost certainly untrue, since a lower speed sustained even for a few seconds would have delivered the defendant to the point of impact at a moment when the victim had already passed. For that matter, an even higher speed would have caused the car to reach the scene before the victim did. Thus the question is not whether the trier of fact may conclude that the defendant's speed was a "cause in fact," but whether her violation of the speeding law, from among the many causes that led in fact to the accident, is the one to which the law should attribute the consequences.

If we were at all inclined to believe that the victim had darted precipitously into the road, we would acquit the defendant not because she was not negligent and not because her speed was not a cause of the accident, but because the victim's action --- an action of a kind that is at least as likely as excessive speed to create a grave risk of the type of harm that occurred here --- would prevent the defendant's action from being the legal or "proximate" cause.

[4]. Nor, in any case, could the defendant be exonerated from the legal effects of her violation of the law on the ground that she also committed some other sort of negligence that would have caused the accident anyway.

As for defendant's suggestion that the victim died when her head struck the pavement and that such an injury might just as well have been fatal if the defendant's initial speed had been twenty miles per hour as if it had been twenty-seven or forty-five, it illustrates the difficulties of analyzing situations other than the one that actually happened. For the reasons we have discussed, however, we reject the assumption that the victim would have been trapped on the hood of the moving car in the first place if defendant had been observing the speed limit.

The defendant's final contention is that there was insufficient evidence from which to conclude beyond a reasonable doubt that the injury actually caused the victim's death. Defense counsel points out that no autopsy was done, and suggests that the victim might have been suffering from a tumor. No evidence was introduced, however, to give even the vaguest support to any such alternative hypothesis. When a head injury is followed immediately by a coma and soon thereafter by death, and when there is no evidence whatever that anything else was wrong with the deceased, triers of fact invariably conclude that he died from the injury. In this case the conclusion was bolstered by the uncontested expert testimony of the attending physician. It is immaterial that something else might have been done to make the diagnosis even more certain.

The motion for reconsideration is denied.